UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

FEB 18 2020

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| Brian Michael Corpian | § | |
| Plaintiff, | § | |
| v. | § | 4:20-cv-00152 |
| | § | Trial by Jury Demanded |
| Carrington Mortgage Services, LLC | § | |
| Defendant. | § | |

## AMMENDED COMPLAINT WITH BRIEF IN SUPPORT OF PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff, Brian Michael Corpian, ("Plaintiff"), Pro Se, complains against Carrington Mortgage Services, LLC, ("Carrington Mortgage"), Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff alleges that Defendant wrongfully foreclosed on Plaintiff's home without having any legal authority whatsoever to claim a mortgage default that triggered the substitute trustee sale of the property, which lead to Defendant allegedly purchasing the property through said sale and obtaining a substitute trustee deed, in which the Defendant claims superior title to the property through.

2. Plaintiff also alleges an individual claim against Defendant for actual fraud, whereas the Defendant has caused to filed fraudulent title documents which include an assignment of a paid off mortgage to Defendant and a unlawfully obtained substitute

1

trusteed deed, which have resulted in a cloud of the title chain of the Plaintiff's property

3. Plaintiff also alleges an individual claim against Defendant for an attempted grand theft of the Plaintiff's property by the Defendant causing to be recorded fraudulent title documents and submitting the same to both state and federal Courts, in an attempt to use the Courts to acquire possession of the Plaintiffs property.

4. Plaintiff also alleges a breach of contract between the Plaintiff, William Lucas and Defendant, whereas the Defendant protecting any interest that the Defendant may have in the Plaintiff's property, requested and agreed to pay Plaintiff and Lucas to repair the property after the property was flooded from Hurricane Harvey. Defendant, later refused to pay Plaintiff and Lucas, without comment and or any justification whatsoever, either written and or verbal.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 18 U.S.C. § 1965 and 12 U.S.C. § 2605(f). The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §§ 1367 and 1332(d)(2).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and Division, a significant part of the events leading to Plaintiff's claims occurred in this District and Division, and Defendants maintain offices in Texas.

## PARTIES

7.  Plaintiff is a natural person residing within this District and Division.

8.  Carrington Mortgage is a foreign corporation with a principal place of business in California, operating as a mortgage servicer in Texas.

## FACTS

### *Plaintiff Mother Obtains a Mortgage Loan*

9.  On or around December 1, 2006, Plaintiff deceased mother, Diane Corpian, apparently borrowed $162,155.00 in order to finance the purchase of a certain home ("Property").

10. The Note for her home loan was secured by a Deed of Trust and recorded in the Fort Bend County Clerk's office; instrument no. 2006151767

11. At the time of the homes purchase, Pulte Mortgage LLC ("Pulte") was the beneficiary of Plaintiff's Note and Deed of Trust, and Pulte Mortgage LLC was the servicer of the loan and Mortgage Electronic Registration Systems ("MERS") was listed as the Nominee for Pulte.

### *Plaintiff's Mother Pays off the Original Mortgage in Full*

12. On February 23, 2012, Plaintiff's deceased mother paid off the mortgage note in full to Chase Bank, who acquired the mortgage note from Pulte Mortgage LLC, sometime in 2007.

### *Plaintiff's Mother Gives Property to Spouse by Gift Deed*

13. In an agreement between the Plaintiff's deceased mother and her spouse William Lucas ("Lucas"), on July 25th, 2012, property was given to Lucas, by virtue of gift deed with a verbal agreement should the Plaintiff ever need a place to live, the Lucas would provide the house for said purpose.

### *Corpian by Virtue of Quit Claim and Gift Deed is The Legal Owner of the Property*

14. Lucas has since given all his rights and interests to the property to Corpian by virtue of quit claim and gift deed to Corpian, earlier given to Corpian in case of the death of Lucas, who is in failing health. Corpian is now asserting his rights as the actual owner of the property.

### *Plaintiff's Mother Dies Intestate*

15. On February 28, 2014, Plaintiff's mother, Diane Constance Corpian died intestate.

*Defendant Causes to be Filed a Fraudulent Assignment on the Original Deed of Trust for the Plaintiff's Property*

16. On September 24, 2014, 207 days after the death of the Plaintiff's mother, Defendant fraudulently caused to be filed an assignment of the properties original deed of trust, recorded with the Fort Bend County Clerk as instrument no. 2014104753, whereas all beneficial interest under the deed to trust and original mortgage note, were unlawfully transferred by Mortgage Electronic Registrations System, as sole nominee for Pulte Mortgage LLC, to the Defendant.

*The Transference of the Original Deed to Trust for Plaintiff's property to Defendant Was Committed through Fraudulent Information Provided by the Defendant*

17. On September 24, 2014, Mortgage Electronic Registration Systems, acted upon false information provided by Defendant to MERS, whereas Defendant falsely claimed to have the legal right to service the original mortgage, neglecting to inform MERS, that the original mortgage had been paid off in full on February 23, 2012.

***Defendant Caused a Wrongful Substitute Trustee Sale and Benefitted from the Same***

18. On October 2, 2018, proceeding under fraudulent information propounded by Defendant, ie., that the original mortgage was in default for nonpayment, Defendant caused Ana Sewert, acting as a substitute trustee of the nominee MERS of the original deed of trust for Plaintiff's property, to sell the Plaintiff's property though a substitute trustee sale to the Defendant for $164,800.00, without the consent of the Plaintiff and or Lucas.

***Defendant Obtained and Caused to Be Filed a Substitute Trustee Deed Obtained by the Defendants Fraud***

19. On October 2, 2018, Ana Sewert, acting as a substitute trustee of the nominee MERS for the original deed of trust, caused to be filed with the Fort Bend County Clerk, instrument no. 208115517, a certain fraudulent substitute trustee deed, which Defendant has continued to claim as proof of superior title to the Plaintiff's property.

***Continuing Their Fraudulent Scheme, Defendant Obtained a Judgement for Forcible Detainer to Take Possession of the Plaintiff's Property and to Evict its Lawful Tenant***

20. Defendant on its fourth attempt to prevail in a forcible detainer action against the occupant of the property, in case no. 19-CCV-065346, adjudicated in the Fort Bend County

Court of Law no. 2, on July 16, 2019, submitted its fraudulently obtained substitute trustee deed and perjured testimony through its counsel, to obtain a judgement in the Defendants favor, to take possession of the Plaintiff's property and to evict a tenant residing in said property under a valid and lawful lease.

***Defendants Fraudulent Scheme to Fraudulently Deprive Defendant his Rightful Possession and Ownership of the Property Continues to Cause a Cloud on the Properties Title***

21. Due to the Defendant's unlawful actions, as stated herein, Plaintiff is hindered from selling the property due to a cloud on its title and the properties lawful tenant under lease, has resided in the property under the fear of having to pack up a four bedroom house and move within a 24 hours' notice should a writ of possession issue and be served, as threatened by the Defendant's counsel.

***Defendants Fraudulent Scheme to Fraudulently Deprive Defendant his Rightful Possession and Ownership of the Property Continues to Cause Plaintiff Emotional Distress***

22. The illegal and outrageous actions of the Defendant continue to cause the Plaintiff severe emotional distress. Certainly, no reasonable trier of fact should find that an indigent party unlawfully attacked by a party with billions of dollars in assets using high paid counsel to unlawfully deprive the Plaintiff the opportunity to either sell, lease or reside in peaceful enjoyment of property, lawfully belonging to the Plaintiff, would cause any normal person severe emotional distress.

## COUNT ONE:
## ACTUAL FRAUD

23. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth herein.

24. During a March 18, 2014, phone call, a representative / employee of Carrington Mortgage, who identified himself as a senior mortgage representative, named Richard, having been advised by both the Plaintiff and Lucas, that the mortgage for the property was paid off by the Plaintiff's mother in 2012, Defendant's representative requested documentary evidence of the Plaintiff's deceased mothers property payment records with Chase Bank.

25. Plaintiff relied on the representation of Carrington Mortgage's representative / employee, that the Defendant would correct the error and not pursue any claims against the Plaintiff's property, upon receipt of the requested documents.

26. Plaintiff submitted the original documents requested by the Carrington Mortgage representative, by immediately posting the same with the US Mail, by certified mail to the Defendant, per the Defendant's telephonic request on March 18, 2014.

27. Carrington Mortgage knew or should have known that Plaintiff was relying on the Defendant's representation that upon receipt and investigation of the

8

submitted documents, Carrington Mortgage would cease and desist in propounding any further interest in the Plaintiff's property.

28. On August 4, 2014, Plaintiff and Lucas contacted a representative/employee of the Defendant, who represented herself to be a mortgage supervisor named Mary. At that time Mary claimed that she was the closest contact with Carrington Mortgage who worked with their legal department. Mary went on to explain that after a "thorough investigation" of the Plaintiff's submitted mortgage payment records to Chase Bank and records of the Defendant, it was determined that Carrington Mortgage had acquired interest in the original mortgage through a "bundled" purchase by Carrington Mortgage from Chase Mortgage, that was in fact paid off and that Carrington Mortgage would cease and desist in any further attempts to collect payments on the paid off mortgage.

29. The representation made by Carrington Mortgage's representative/employee was untrue as evidenced by Carrington Mortgage having caused the assignment of the properties deed of trust to Carrington Mortgage on September 24, 2014, as stated herein.

30. With full knowledge that the Plaintiff's mother, unaware of any claims made by the Defendant in the property, was deceased, had paid off her mortgage in full in 2012 and never borrowed against the property again, Carrington Mortgage caused to be filed documents with the Fort Bend County Clerk, as stated herein, which included a fraudulent certification claiming that that Plaintiff's mother was alive, which in effect falsely asserted that Carrington Mortgage was the last mortgagor of record for the

property and that the Carrington Mortgage held a superior lien against the property.

31. Continuing on with its fraudulent scheme, as discussed herein, on October 2, 2018, Carrington Mortgage caused a substitute trustee sale and foreclosure on the property, knowingly providing false information to the substitute trustee, ie., that Defendant held a mortgage on the property which was in default.

32. Profiting from its fraudulent scheme, Defendant purchased the property at a substantial discount of the properties assessed value of $187,000.00 for the amount of $164,800.00 through the wrongful foreclosure and substitute trustee sale, which as stated herein, were triggered by the both the fraudulent statements and filing of documents, perpetrated and or caused to be propounded, by the Defendant.

33. In continuation of the Defendant's fraudulent scheme and in an attempt to reap the profits from its illegal activities, Defendant, through its unscrupulous counsel, continues to attempt to take possession of the Plaintiff's property, in its attempt to sell said property at a substantial profit.

34. Defendants fraudulent scheme continues to deprive the Plaintiff of his rightful enjoyment of the property, the opportunity to sell or the lease the same.

35. Plaintiff requests that the Court declare the foreclosure sale void or, in the alternative, voidable; impose a resulting trust or, in the alternative, a constructive trust

for his benefit so that his home can be deeded back to him; and award Plaintiff actual damages for the cloud on title of the Plaintiff's property and punitive damages of $350,000,000.00

## COUNT 2
## BREACH OF CONTRACT

36. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth herein.

37. On September 12, 2017, Defendant knowingly and voluntarily entered into a verbal contractual agreement with Plaintiff and Lucas, to employ Plaintiff and Lucas into repairing damages to the property caused by catastrophic flooding from Hurricane Harvey.

38. Plaintiff and Lucas incurred over $56,000.00 in material costs and labor to repair the property.

39. Plaintiff mitigates his claim against Carrington for Breach of Contract, at $28,000.00, half of the total cost of repairs and excluding Plaintiff's own labor in

repairing the property, because Plaintiff's claim against Defendant is separate of any claims that Lucas may have against the Defendant.

40. From January 10, 2018 to date, Plaintiff has repeatedly submitted copies of repair bills for the property to the Defendant which the Defendant continues to ignore and or refuse to pay.

41. On February 15, 2019, during a telephone call between Plaintiff and Defendant's representative / employee, who claimed to be a loss and insurance specialist for the Defendant, identifying herself as Fatima, indicated that Carrington Mortgage refused to reimburse the Plaintiff for said repairs, stating in part that, "Due to all the expenses we have incurred in defending lawsuits filed by William Lucas, we are not going to pay you for repairs to your home.

## TRIAL BY JURY IS DEMANDED

42. Plaintiff demands that this matter be tried by a jury.

## **PRAYER AND CLAIM FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment on behalf of Plaintiff and against Defendant as follows:

- A. Court take note that Plaintiff may seek prior to trial to reamend Complaint for Certification of this matter to proceed as a class action under Fed. R. Civ. P. 23(b);
- B. Statutory, actual and punitive damages as pled;
- C. Litigation expenses and costs of suit; and
- D. Such other or further relief as the Court deems proper.

Respectfully submitted by,

/s/ Brian Michael Corpian
Brian Michael Corpian
7036 Dairy Ashford
Houston, Texas 77072
Rustydog777@gmail.com
(281)690-0662